UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MELINDA MERRITT and | ) |
| BENJAMIN OLIVAS | ) |
| | ) |
|    Plaintiffs, | ) |
| | )    No.: 3:14-cv-19-PLR-HBG |
| v. | ) |
| | ) |
| MOUNTAIN LAUREL CHALETS, INC., | ) |
| RSC PROPERTIES GENERAL PARTNERSHIP, | ) |
| And PROGRESSIVE EMPLOYER | ) |
| MANAGEMENT COMPANY II, INC., | ) |
| | ) |
|    Defendants. | ) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Merritt and Olivas have filed a complaint against Defendants Mountain Laurel Chalets, Inc. ("Mountain Laurel"), RSC Properties General Partnership ("RSC"), and Progressive Employer Management Co. II, Inc. ("PEMCO") alleging improper business practices and retaliatory firing, in violation of the False Claims Act ("FCA"), the Tennessee Public Protection Act, the Tennessee Lawful Employment Act, and Tennessee common law. Plaintiff Olivas has also filed a claim against Defendants alleging violation of the Fair Labor Standards Act.

Pending before the Court are Defendants' motions to dismiss for failure to state a claim filed against each plaintiff. [D. 16; D. 18] Defendants present two theories to support their

motions to dismiss. First, PEMCO and RSC argue that they were not joint employers with Mountain Laurel. Plaintiffs respond by arguing that PEMCO, via its paychecks and separation notices to Plaintiffs, exercised an "indicia of control" over them. They also contend that RSC was a joint employer because part of their pay from the latter derived from their services to RSC-owned properties and that discovery should commence so as to determine the degree to which Mountain Laurel and RSC may be a single entity. Defendants reply, *inter alia*, that Plaintiffs' Third Amended Complaint asserts mere threadbare legal conclusions, that under the "economic reality test" of joint employment, PEMCO and RSC are not joint employers with Mountain Laurel, and that Plaintiffs have not taken any steps toward a *qui tam* action under the FCA.

Defendants next argue that Plaintiffs have not sufficiently asserted that they engaged in activity protected by the FCA. In reply to Plaintiff's contrary reassertions, Defendants state that Plaintiffs have failed to satisfy the three-prong *Yuhasz*[1] test and, accordingly, have not shown that these actions amount to activity protected under the FCA.

## I.  Background

Plaintiff Merritt was employed by Mountain Laurel beginning on December 10, 2004, and at the time of her termination on October 25, 2013, held the title of "Head of Housekeeping/Assistant Supervisor." [R. 64 at ¶ 12] Plaintiff Olivas joined Mountain Laurel on August 15, 2012. [*Id.* at ¶ 10] When he was terminated on October 24, 2013, he was employed as "Supervisor of Maintenance, Housekeeping and Laundry." [*Id.* at ¶ 11]

At some point in the 2013, Mountain Laurel agreed with PEMCO to "lease back" some of its employees. [*Id.* at ¶ 16] As a result, Plaintiffs received pay checks which included both

---

[1] *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559 (6th Cir. 2003).

Mountain Laurel's and PEMCO's names. [*Id.*] Despite this arrangement, Mountain Laurel alone undertook the day-to-day supervision of Plaintiffs. [*Id.* at ¶ 17] As part of their duties with Mountain Laurel, which manages and rents chalets for Smoky Mountains vacationers, Plaintiffs were required to service approximately seventeen rental chalets which Mountain Laurel managed but RSC owned. [*Id.* at ¶¶ 20–21] Uniquely, while Mountain Laurel charged all other property owners for their services, RSC was considered "part of" Mountain Laurel and thus was not charged. [*Id.* at ¶ 21]

Mountain Laurel also employed a woman named Marina Gomez, who worked in its laundry. [*Id.* at ¶ 23] Gomez was an undocumented alien and, in order to pay her without alerting the IRS or ICE of her employment, [*Id.* at ¶ 35] Mountain Laurel engaged in a subterfuge in which Thomas Goodwin, Mountain Laurel General Manager, acquiesced [*Id.* at ¶ 27] and Dorothy Vaden, Human Resources Manager for Mountain Laurel, participated. [*Id.* at ¶ 25] Mountain Laurel, through checks written by Vaden, paid Gomez by preparing checks instead to Shadow's Cleaning, a sole proprietorship which, prior to its 2009 bankruptcy dissolution, was owned by Gomez's daughter, Jazmin Prieto Hawks. [*Id.* at ¶¶ 25–26] Another employee of Mountain Laurel, Corey Hawks, who is married to Jazmin Prieto Hawks and holds the title of "General Manager on Property" at Mountain Laurel, collected these Shadow's Cleaning checks. [*Id.* at ¶ 24]

In August 2012, Merritt discovered Gomez's undocumented status and protested her employment with Mountain Laurel. [*Id.* at ¶ 28] She then protested to her supervisor in September 2013, after which several of Merritt's coworkers warned her that her job was in jeopardy. [*Id.* at ¶ 31] Despite these warnings, Merritt filed anonymous complaints with the IRS and ICE regarding Gomez's employment by Defendants. One of these agencies subsequently

3

contacted Mountain Laurel. [*Id.* at ¶ 36] Shortly after this, in late September 2013, the management of Mountain Laurel began to treat Merritt poorly, becoming cold and difficult toward her. [*Id.* at ¶ 37] Olivas, for his part, learned of Gomez's employment ineligibility in March 2013, after which he informed Vaden that he would not accept the risks of falsely paying such an employee. [*Id.* at ¶ 30]

Separately from Gomez's employment, Plaintiffs claim that several of the properties managed by Mountain Laurel were laden with mold, [*Id.* at ¶ 38] that some chalets had mushrooms growing in them, and that one had a bed bug infestation. [*Id.* at ¶ 44] Despite Plaintiffs' repeated complaints that these conditions were injurious to the guests who rented these chalets, [*Id.* at ¶ 38] Mountain Laurel instructed Merritt to undertake merely cosmetic measures to counteract the mold growth so that guests would not suspect the chalet's toxic atmosphere. [*Id.* at ¶ 39] However, Merritt refused to participate in cleaning the moldy properties because of the health hazard to guests and the fraud. [*Id.* at ¶ 42] In particular, Merritt complained to Goodwin that a chalet named "High Point" was a health hazard, and Goodwin in response, instructed her to superficially clean it to prepare for guests. [*Id.* at ¶ 40] She also told the Front Desk Team Leader, Cheryl Ryan, that someone should report Mountain Laurel to the Health Department; Ryan repeated this to Goodwin or Corey Hawks. [*Id.* at ¶ 41]

Olivas likewise protested, telling Mountain Laurel management that they were "playing with Russian roulette" by continuing to rent the affected chalets; and that he believed guests could become seriously ill from staying in one of them. [*Id.* at ¶ 46] Moreover, when he, upon request, identified the chalets with severe toxic mold infestation, he was told to continue renting one of the chalets because of the significant revenue derived from it. [*Id.* at ¶ 43] Finally, shortly before his termination, Olivas refused to sign Tennessee Department of Labor and Workforce

Development paperwork regarding the termination of a fellow employee. [*Id.* at ¶ 47] While this employee was terminated for a DUI arrest and for substance abuse issues, Mountain Laurel wanted him to sign paperwork stating that the employee's termination was due to a lay-off. [*Id.*]

Around October 24, 2013, Olivas was discharged, the reason provided being that he engaged in prohibited conduct, was insubordinate, and shared confidential information. [*Id.* at ¶ 53] He refused to sign a release which would provide him with two weeks' severance pay. [*Id.*] Approximately one day later, Merritt's employment was terminated. [*Id.* at ¶ 54] She was told it was due to a "violation of company rules – insubordination," and she refused to sign a release in return for three weeks' severance pay. [*Id.*] PEMCO provided, and Goodwin signed, Plaintiff's "Employee Separation Notices." [*Id.* at ¶ 19]

Distinct from the above, Olivas avers that, during the first several months of his employment, he was paid on an hourly basis and frequently worked more than forty hours per week but, despite this, he was never paid overtime. [*Id.* at ¶¶ 49–50] However, after accruing a considerable amount of unpaid overtime, Defendants switched him to salaried employee status to avoid paying future overtime. [*Id.* at ¶ 51]

## II.  Standard of Review

Defendants have moved for dismissal of Plaintiff's Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging that Plaintiff has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When determining the sufficiency of the complaint against a motion to dismiss under this Rule, the court must accept as true all facts alleged in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   However,

the court is not required to accept as true any proffered legal conclusions. *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

A motion to dismiss under Rule 12(b)(6) must be denied where the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conversely, dismissal under this Rule "is proper when there is no set of facts that would allow the plaintiff to recover." *Carter v. Cornwell*, 983 F.2d 52, 54, *rehearing denied* (6th Cir. 1993); *see also Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) ("To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.").

## III.   Discussion

### A.  Under Plaintiffs' Federal Claims, PEMCO Was a Joint Employer and RSC Was Neither a Joint Employer nor Integrated Entity with Mountain Laurel

#### 1.  *Darden* Analysis

#### a.  *Darden* Applies Only Against PEMCO

Defendants first argue that Plaintiffs have insufficiently alleged that PEMCO and RSC were their joint employers with Mountain Laurel. At the federal level, "absent a clear statutory definition, employer status is generally determined based on a variety of factors." *Harris v. Quinn*, 134 S. Ct. 2618, 2638 n.20 (2014). In this Circuit, those factors were pronounced in *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318 (1992). The court in *Johnson v. City of Saline*, 151 F.3d 564, 568 (6th Cir. 1998) clearly established this, finding that *Darden*:

> stands for the proposition that when a statute has left a term undefined, has left no hint in the legislative history of its intended meaning for the term, and the term has 'accumulated settled

6

> meaning' under the common law, there is a presumption that Congress meant to incorporate the common-law definition into the statute.

(citing *Darden*, 503 U.S. at 322); *see also id.* (noting that *Darden* is "a rule of general applicability"). Nowhere in the FCA or even in Title 31 of the United States Code is "employer" defined, nor does the legislative history provide any guidance. Accordingly, because "employer" has an immense history and settled meaning in the common law, *Darden* applies.

However, in *Demski v. United States Department of Labor*, 419 F.3d 488 (6th Cir. 2005), the Sixth Circuit circumscribed *Darden*'s applicability by pronouncing a preliminary analytical step: The court must first establish that the alleged employee was in fact a "hired party," that is, that a contractual relationship existed between the alleged employee and employer. *Id.* at 492.

Plaintiffs aver sufficient facts to find that they were hired parties of PEMCO. According to the Third Amended Complaint, PEMCO's name appeared on the paychecks, [D. 28 at ¶ 16] the employee handbooks, [*Id.* at ¶ 18] and their termination notices. [*Id.* at ¶ 19] These allegations are supplemented by the statutory rights which PEMCO had over plaintiffs and the statutory obligations it owed to Plaintiffs. Under Tennessee law,[2] PEMCO was obligated to pay Plaintiffs' wages regardless of payments from Mountain Laurel to it, TENN. CODE ANN. § 62-43-108(a)(1)(B); and it retained the authority to "hire, terminate, discipline and reassign" Plaintiffs. *Id.* at § 62-43-108(a)(1)(C). Moreover, these rights and obligations are mandatory in all contracts which an employee leasing company executes with a client business. *Id.* at § 62-43-108(a)(1)

---

[2] "A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003); *see also Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) ("A court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion."). While PEMCO is a corporation chartered in Florida, [D. 28 at ¶ 8] it is "duly qualified to transact business in the State of Tennessee." [*Id.*] PEMCO's business in this State is therefore subject to the laws of Tennessee. TENN. CODE ANN. § 48-25-105(b).

7

("The contract shall . . . provide that the staff leasing company . . . ."). The Court thus finds for purposes of the federal claims that Plaintiffs were hired parties of PEMCO.

The same cannot be said, however, for RSC: Plaintiffs' Third Amended Complaint asserts merely that Mountain Laurel's General Manager is married to a partner of RSC, [D. 28 at ¶ 15] and that, for various reasons, RSC was considered a "part of" Mountain Laurel. [*Id.* at ¶ 21] Thus, if RSC is a joint employer of Plaintiffs, it is so only by virtue of being an integrated enterprise with Mountain Laurel, whose employer status has not been challenged. Plaintiffs, then, do not sufficiently aver the existence of a distinct contractual relationship between RSC and Plaintiffs, and accordingly, the Court finds that the latter were not hired parties of RSC as it concerns the federal claims. *Cf. Demski*, 419 F.3d at 492 (finding no contractual relationship between petitioner and company where company had contractual relationship with firm in which petitioner was the sole shareholder).

### b. Under the *Darden* Factors, PEMCO Jointly Employed Plaintiffs with Mountain Laurel

*Darden* delineates twelve nonexclusive factors that inform the overarching measure of whether one is an employer, namely, "the hiring party's right to control the manner and means by which the product is accomplished." *Darden*, 503 U.S. at 323 (quoting *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751 (1989)). These factors are:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

8

*Id.* at 323–24 (quoting *Reid*, 490 U.S. at 751–52). When looking at these factors, the Court looks at "all of the incidents of the relationship . . . with no one factor being decisive." *Id.* at 324 (quoting *NLRB v. United Insurance Co. of America*, 390 U.S. 254, 258 (1968). Yet at the same time, *Darden* "defines . . . the employer's ability to control job performance and employment opportunities of the aggrieved individual as the most important of many elements to be evaluated . . . with no one factor being decisive." *Simpson v. Ernst & Young*, 100 F.3d 436, 442 (6th Cir. 1996).

i.    **The First *Darden* Factor Suggests that Plaintiffs Were Employees of PEMCO**

Under the first factor, the fact that a hired party performs a job requiring much skill suggests that she is not an employee of the hiring party. *Moore v. Lafayette Life Insurance Co.*, 458 F.3d 416, 440 (6th Cir. 2006). In their Third Amended Complaint, Merritt avers that, at her termination, she was employed as "Head of Housekeeping/Assistant Supervisor," [D. 28 at ¶ 13] while Olivas asserts that his title at termination was "Supervisor of Maintenance, Housekeeping and Laundry." [*Id.* at ¶ 11]

These occupations do not comport with the first *Darden* factor. Among the occupations that courts have found to be "skilled" are sculptors, *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989); musicians, *Bartels v. Birmingham*, 332 U.S. 126 (1947), *superseded on other grounds by statute*, 26 U.S.C. § 3121(d), *as recognized in Donovan v. Agnew*, 712 F.2d 1509, 1513 (1st Cir. 1983) (citing S. Rep. No. 80-1255, at 1752 (1948), *reprinted in* 1948 U.S.C.C.A.N. 1752); accountants and bookkeepers, *Janette v. American Fidelity Group, Ltd.*, 298 F. App'x 467 (6th Cir. 2008); and video editors, *Hi-Tech Video Productions, Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093 (6th Cir. 1995). More broadly, the Sixth Circuit generally considers an occupation to be "skilled" when it is within a "highly specialized field" which

requires "considerable training, education, and skill." *Weary v. Cochran*, 377 F.3d 522, 527 (6th Cir. 2004) (internal quotation marks omitted); *see also Shelter Mutual Insurance Co. v. Jones*, 343 F.3d 925, 926 (8th Cir. 2003) (finding hired party to be an employee in part because "only basic skills were required for [his] job"). Nothing in the Third Amended Complaint permits the inference that Plaintiffs held "skilled" positions and, therefore, the first *Darden* factor suggests that they were employees of PEMCO.

### ii. The Second *Darden* Factor Suggests that Plaintiffs Were Not Employees of PEMCO

A hired party is less likely to be considered an employee under *Darden* analysis where the hiring party does not provide her with the tools necessary for her job. *Ware v. United States*, 67 F.3d 574, 577 (6th Cir. 1995). The Third Amended Complaint does not claim that PEMCO provided Plaintiffs with any tools necessary for their jobs. According to Plaintiffs, PEMCO is an "employee leasing firm" [D. 28 at ¶ 16] which is based in Florida. [*Id.* at ¶ 8] Accordingly, the second *Darden* factor suggests that Plaintiffs were not employees of PEMCO.

### iii. The Third *Darden* Factor Suggests that Plaintiffs Were Employees of PEMCO

When evaluating the third *Darden* factor, "the Court is not concerned with the length of the relationship, but rather, when hired, whether the relationship was one of a long-term at-will employee or one to complete a particular task in a specified time frame." *Janette*, 298 F. App'x at 474 (quoting *Lantz v. United States Postal Service*, No. 2:05-cv-207, 2006 WL 2882347, at *3 (6th Cir. Oct. 5, 2006)); *see also Bartels*, 322 U.S. at 131. That is, hired parties are more likely to be deemed employees where they "have a permanent working arrangement with the company under which they may continue as long as their performance is satisfactory." *United Insurance Co. of America*, 390 U.S. at 259.

With these considerations in mind, the third *Darden* factor suggests that PEMCO employed Plaintiffs. Plaintiffs' separation notices came on a form it provided, [D. 28 at ¶ 19] implying that PEMCO terminated Plaintiffs simultaneously with Mountain Laurel. Moreover, the reasons given for Plaintiffs' terminations were "insubordination" [*Id.* at ¶¶ 53–54] and for engaging in prohibited conduct and sharing confidential information. [*Id.* at ¶ 53] The fact of Plaintiffs' termination, combined with the reasons given therefor, can reasonably lead one to conclude that Plaintiffs had "a permanent working arrangement under which they may continue as long as their performance is satisfactory." *United Insurance Co. of America*, 390 U.S. at 259. It follows, then that the third *Darden* factor suggests that PEMCO employed Plaintiffs.

### iv.    The Fourth *Darden* Factor Suggests Plaintiffs Were Employees of PEMCO

Courts are more likely to find hired parties to be employees where the hiring party has the right to assign additional projects to the hired parties. *Demski v. United States Department of Labor*, 419 F.3d 488, 492 (6th Cir. 2005). Under Tennessee law, PEMCO has a statutory right of "direction and control over leased employees assigned to the client's location." TENN. CODE ANN. § 62-43-108(a)(1)(A). Moreover, this statutory right is mandatory in all contracts which an employee leasing company executes with a client business. *Id.* at § 62-43-108(a)(1) ("The contract shall . . . provide that the staff leasing company . . . ."). Thus, because the right to assign additional projects to hired parties plainly falls within the power of "direction and control," the fourth *Darden* factor as applied to PEMCO suggests that it employed Plaintiffs.

### v.    The Fifth *Darden* Factor Suggests that Plaintiffs Were Not Employees of PEMCO

If a hired party has discretion over his own working times and hours, that weighs against finding that he is an employee. *United Insurance Co. of America*, 390 U.S. at 258; *Johnson*, 151 F.3d at 569. Stated differently, a hiring party is less likely to be deemed an employer where it

11

does not dictate the hired party's working times and hours. *Shah v. Deaconess Hospital*, 355 F.3d 496, 500 (6th Cir. 2004).

It may appear that PEMCO had this authority over Plaintiffs via its statutory right of direction and control. However, this same provision contains a clause providing that:

> the client may retain sufficient direction and control over covered employees that is necessary to conduct the client's business and without which the client would be unable to conduct its business, discharge any fiduciary responsibility that it may have or comply with any applicable licensure, regulatory or statutory requirement of the client.

TENN. CODE ANN. § 62-43-108(a)(1)(A). Dictating a hired party's working hours and times appears to fall well within this clause, and accordingly it is unclear whether PEMCO actually had any such right over Plaintiffs. Furthermore, Plaintiffs' Third Amended Complaint does not aver that PEMCO had the power to dictate Plaintiffs' working times and hours. The fifth *Darden* factor thus weighs against finding that Plaintiffs were employees of PEMCO.

### vi. The Sixth *Darden* Factor Suggests that Plaintiffs were Employees of PEMCO

"As a general matter, lack of a consistent salary supports a conclusion that one is an independent contractor"—*i.e.*, not an employee. *Janette*, 298 F. App'x at 475 (citing in part *Department of Labor v. Lauritzen*, 835 F.2d 1529, 1542 (7th Cir. 1987)); *see also Weary*, 377 F.3d at 527. Here, again, statutory rights are informative as to PEMCO: Under Tennessee law, it "assumes responsibility for the payment of wages of its covered employees . . . without regard to payments by the client to the leasing company." TENN. CODE ANN. § 62-43-108(a)(1)(B). And this obligation is also mandatory. *Id.* at § 62-43-108(a)(1). The Third Amended Complaint asserts facts consistent with this obligation: Olivas began his employment as an hourly employee who appears to have regularly worked approximately forty hours per week, [D. 28 at ¶ 49–50] at some point became a salaried employee, [*Id.* at ¶ 51] and was offered severance pay upon

12

termination. [*Id.* at ¶ 53] With regard to Merritt, the Third Amended Complaint avers that she too was offered severance pay upon termination. [*Id.* at ¶ 54] It therefore appears that Plaintiffs earned a consistent salary, suggesting that they were indeed employees of PEMCO.[3]

### vii.   The Seventh *Darden* Factor Suggests that Plaintiffs Were Employees of PEMCO

A hired party is less likely to be deemed an employee where she has the authority to hire and terminate her own staff. *Bartels*, 332 U.S. at 132; *Johnson*, 151 F.3d at 569. Plaintiffs' Third Amended Complaint does not claim that they had any hiring or firing authority. Accordingly, the seventh *Darden* factor weighs in favor of finding that PEMCO employed Plaintiffs.

### viii.   The Eighth *Darden* Factor Suggests that Plaintiffs Were Not Employees of PEMCO

Under the eighth *Darden* factor, the fact that a hired party performs "functions that are an essential part of the company's normal operations" counsels in favor of finding him to be an employee of the hiring company. *United Insurance Co. of America*, 390 U.S. at 259; *see also Moore*, 458 F.3d at 440.

PEMCO is an employee leasing firm, [D. 28 at ¶ 16] which provides payroll, workers' compensation, employee benefits, and human resources services. [Doc. 17, Ex. 1.][4] Under this factor, then, Plaintiffs do not appear to have been employees of PEMCO: They did not perform any of the functions of employee leasing firms, but rather appear to have come under PEMCO's ambit by reason of the services that PEMCO provided to Mountain Laurel.

---

[3] When evaluating the sixth *Darden* factor, courts have emphasized how the employee is paid rather than the source of the payment. *See, e.g.*, *Weary*, 377 F.3d at 527 (looking to "the fact that [appellant] was paid solely upon a commission basis"); *Ware*, 67 F.3d at 579 ("The district court found that eleven factors favored [appellant's] classification as an independent contractor: . . . that [he] was paid almost entirely on commission . . . ."); *Wolcott v. Nationwide Mutual Insurance Co.*, 884 F.2d 245, 251 (finding appellant not to be an employee in part because "he was paid on commission").

[4] While, normally, "[i]n determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, . . . items appearing in the record of the case . . . also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001); *see also Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011).

13

### ix. The Ninth *Darden* Factor Suggests that Plaintiffs Were Employees of PEMCO

A hired party is more likely to be deemed an employee when the hiring party is still in business, because this "increases the possibility that it would employ people." *Marco v. Accent Publishing Co., Inc.*, 969 F.2d 1547, 1551 (6th Cir. 1992). PEMCO is still in business, [D. 28 at ¶ 8] and it is thus more likely under this *Darden* factor that any alleged employees of these firms are in in fact employees thereof.

### x. The Tenth *Darden* Factor Suggests that Plaintiffs Were Employees of PEMCO

An employer-employee relationship is more likely to be found where the hiring party provides benefits to the hired party. *United Insurance Co. of America*, 390 U.S. at 259; *Demski*, 419 F.3d at 492. Here, again, Tennessee law is informative: Under TENN. CODE ANN. § 62-43-105(a)(1)(B), PEMCO "assumes responsibility for the payment of . . . its employee benefits without regard to payments by the client to the professional employer organization." The tenth *Darden* factor thus suggests that PEMCO employed Plaintiffs.

### xi. The Eleventh *Darden* Factor Suggests that Plaintiffs Were Employees of PEMCO

The fact that a hiring party does not pay taxes on the work of the hired party weighs against finding that the latter is an employee of the former. *United Insurance Co. of America*, 390 U.S. at 259; *Ware*, 67 F.3d at 577. But such is not the case here, as PEMCO must "assume[] responsibility for the payment of . . . its payroll-related taxes . . . without regard to payments by the client to the professional employment organization." TENN. CODE ANN. § 62-43-105(a)(1)(B). Accordingly, the eleventh *Darden* factor counsels in favor of finding Plaintiffs to have been employees of PEMCO.

### xii. The Twelfth *Darden* Factor Suggests that Plaintiffs Were Not Employees of PEMCO

Under the twelfth *Darden* factor, a hired party is less likely to be deemed an employee where she does not work on the hiring party's premises. *United Ins. Co. of America*, 390 U.S. at 258; *Ware*, 67 F.3d at 579. Plaintiffs do not aver that any of the chalets they serviced were owned by PEMCO, and therefore the twelfth and final *Darden* factor suggests that PEMCO did not employ Plaintiffs.

### c.  Summary

The following *Darden* factors weigh in favor of finding, for purposes of the imstant motions to dismiss, that PEMCO employed Plaintiffs: their work was unskilled, a long-term relationship existed between the parties, PEMCO had the right to assign additional projects to Plaintiffs, Plaintiffs earned a consistent salary, Plaintiffs had no role in hiring their assistants or subordinates, PEMCO remains in business, PEMCO provided benefits to Plaintiffs, and PEMCO paid taxes on Plaintiffs' work. And the following factors counsel against finding that PEMCO employed Plaintiffs: it did not provide Plaintiffs' tools, Plaintiffs did not set their own working times and hours, Plaintiffs' work was not a regular part of PEMCO's business, and Plaintiffs' work did not occur on PEMCO's premises.

The Court finds that, on balance, Plaintiffs have averred sufficient factual allegations to permit a reasonable inference that PEMCO was a joint employer of Plaintiffs. This result comports with other jurisdictions which have addressed this question. *See Blue Lake Rancheria v. United States*, 653 F.3d 1112 (9th Cir. 2011); *McLellan v. E.I. DuPont de Nemours & Co., Inc.*, No. 04-cv-314, 2006 WL 3751583 (W.D.N.Y. Dec. 19, 2006); *Kopalaw & Girisgen v. Payroll Solutions*, No. 2:06-cv-487-RCJ-(GWF), 2006 WL 2583226 (D. Nev. Sept. 6, 2006); *Castiglione v. United States Life Insurance Co. in City of New York*, 262 F. Supp. 2d 1025 (D. Ariz. 2003).

**2. RSC and Mountain Laurel Were Not Integrated Enterprises Under Federal Law[5]**

While the Court does not find that RSC was a joint employer of Plaintiffs under *Darden* analysis, Plaintiffs raise the alternative argument that RSC and Mountain Laurel are a single employer, or integrated enterprise. [D. 24 at 5–6; D. 25 at 5–6] Integrated enterprise analysis in the Sixth Circuit follows the four-factor test of *York v. Tenessee Crushed Stone Ass'n*, 684 F.2d 360 (6th Cir. 1982) (adopting the test from *Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc.*, 380 U.S. 255 (1965)). While no circuit has adopted the *Radio Technicians* test in the False Claims Act context, the Sixth Circuit has applied it to many disparate federal questions. *See Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419 (6th Cir. 2014) (FMLA); *NLRB v. Palmer Donavin Manufacturing Co.*, 369 F.3d 954 (6th Cir. 2004) (NLRA); *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990 (6th Cir. 1997) (ADEA and ADA); *Satterfield v. Tennessee*, 295 F.3d 611 (6th Cir. 2002) (Rehabilitation Act); *see also Overland Transportation System, Inc. v. NLRB*, 187 F.3d 637 (6th Cir. 1999) (unpublished) (stating broadly that "[n]ominally separate business entities will be considered a single employer when they comprise an integrated enterprise"). Moreover, other jurisdictions have applied integrated enterprise analysis to actions arising under the False Claims Act. *See Riddle v. DynCorp International, Inc.*, 733 F. Supp. 2d 743 (N.D. Tex. 2010), *rev'd on other grounds*, 666 F.3d 940 (5th Cir. 2012); *United States ex rel. Hefner v. Hackensack University Medical Center*, No. Civ.A. 01cv4078DMC, 2005 WL 3542471 (D.N.J. Dec. 23, 2005). Finally, the Western District of Kentucky in *Thompson v. Quorum Health Resources,*

---

[5] Although Plaintiffs couch their integrated-entity argument within their joint-employer argument, the two are distinct. While joint-employer analysis addresses whether "one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer," integrated-entity, or single-employer, analysis concerns whether "two nominally independent entities are so interrelated that they actually constitute a single integrated enterprise." *Swallows*, 128 F.3d at 993 n.4 (quoting *NLRB v. Browning-Ferris Industries of Pennsylvania, Inc.*, 691 F.2d 1117, 1123 (3d Cir. 1982)).

16

*LLC*, No. 1:06-cv-168-R, 2007 WL 2815972 (W.D. Ky. Sept. 27, 2007), applied the *Radio Technicians* test within the False Claims Act context. We therefore do not hesitate to apply it here.

Under the *Radio Technicians* test, two companies may be considered an integrated enterprise based upon a balancing of the following factors: (1) interrelation of operations; (2) common management, directors, and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control. *Swallows*, 128 F.3d at 993–94. In determining the balance, "[n]one of these factors is conclusive, and all four need not be met in every case." *Id.* at 994.

In their Third Amended Complaint, Plaintiffs proffer two allegations informing our integrated enterprise analysis: The general manager of Mountain Laurel is married to one of the partners of RSC [D. 28 at ¶ 15]; and RSC, uniquely, was not charged labor costs for Mountain Laurel's services. [*Id.* at ¶ 21] The first allegation corresponds to none of the four factors. *Cf. Teamsters Local Union No. 89 v. Kroger Co.*, 921 F. Supp. 2d 733, 743 n.8 (W.D. Ky. 2013) (refusing to apply toward the first factor the fact that several of defendant's ex-employees retained their email IDs and access to defendant's computers). Meanwhile, the second allegation correlates with either the first or fourth factor. That is, Plaintiffs aver only one factual allegation to support their integrated enterprise claim, and that allegation may go to at most two of the factors.

However, this lone factual allegation is not even that substantial. First, this alleged free labor carries little weight as to the first factor of the *Radio Technicians* test: Courts determining interrelation of operations normally look for the existence of "common offices, common record keeping, shared bank accounts and equipment." *York*, 684 F.2d at 362; *see also Swallows*, 128

F.3d at 994. The alleged agreement between RSC and Mountain Laurel is hardly probative of any of these considerations.

Second, as the Sixth Circuit pronounced in *York*, the fourth factor—common ownership and control—actually concerns whether any of the companies comprising the alleged integrated enterprise is a sham. 684 F.2d at 363; *see also EEOC v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 572 (6th Cir. 1984) ("If neither of the entities is a sham then the fourth test is not met."). While it is relevant for analysis of the fourth factor that RSC was not charged for labor undertaken by Mountain Laurel's employees, this fact alone cannot support a finding of common ownership and control, and accordingly Plaintiffs have failed to sufficiently aver the existence of any of the factors under the *Radio Technicians* test..

Nor do we find convincing Plaintiffs' claim that they "will need the discovery process to explore" the existence of an integrated enterprise. [D. 24 at 6; D. 25 at 6] The Sixth Circuit in *Estate of Barney v. PNC Bank, N.A.*, 714 F.3d 920 (6th Cir. 2013) said it best: "Discovery would have allowed [plaintiffs] to determine if this sheer possibility could have been an actuality. But under *Iqbal*, a complaint cannot survive a motion to dismiss—and plaintiffs cannot get discovery—unless the complaint shows that the defendant's wrongdoing is plausible, not just possible." *Id.* at 929. Plaintiffs have not shown this as to RSC.

Accordingly, the Court finds that RSC is not an integrated entity with Mountain Laurel and, thus, was never an employer of Plaintiffs. Plaintiffs' FCA claims and Olivas's Fair Labor Standards Act claim against RSC are hereby **DISMISSED**, **with prejudice**.


**B. Under Plaintiffs' State Law Claims, Neither PEMCO nor RSC Employed Plaintiffs**

In addition to their federal claims, Plaintiffs jointly assert violations of the Tennessee Public Protection Act, the Tennessee Lawful Employment Act, and Tennessee common law. [D. 28 at ¶ 1] Defendants again move to dismiss on the basis that PEMCO and RSC are not joint employers with Mountain Laurel. [D. 17 at 5–9; D. 19 at 5–9] While Plaintiffs' federal-law claims fall under *Darden* analysis, the *Erie* doctrine dictates that Plaintiffs' state-law claims follow an independent line of reasoning. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

## I.  Neither PEMCO nor RSC Directly Employed Plaintiffs

Tennessee law on multiple employers conforms to the Restatement (Second) of Agency § 226, which states that "[a] person may be the servant of two masters, not joint employers, at one time as one act, if the service to one does not involve abandonment of the service to the other." *See also White v. Revco Discount Drug Centers, Inc.*, 33 S.W.3d 713, 724 (Tenn. 2000). Moreover, "[t]wo parties 'may agree to employ a servant together or to share the services of the servant. If there is one agreement with both of [the parties], the actor is the servant of both [when] the servant is subject to joint control.'" *Johnson v. LeBonheur Children's Medical Center*, 74 S.W.3d 338, 344 (Tenn. 2002) (quoting Restatement (Second) of Agency § 226 cmt. b).

Plaintiffs have sufficiently averred that they were able to simultaneously serve all three Defendants. Plaintiffs worked as maintenance and housekeeping supervisors, [D. 28 at ¶¶ 11, 13] and in that capacity serviced RSC-owned chalets, [*Id.* at ¶¶ 20–21] while PEMCO performed Mountain Laurel's various employee leasing needs as they applied to Plaintiffs. [*Id.* at ¶ 16; Doc. 17, Ex. 1] Thus Plaintiffs may have been servants of all three Defendants. To determine whether they were in fact servants, we must next consider whether Plaintiffs have proffered sufficient

factual allegations showing a master-servant relationship between each Plaintiff and each of PEMCO and RSC.

In order to determine whether an agency—here, master-servant—relationship exists between two parties, Tennessee courts look to "the right to control the agent's actions, and, ultimately, the fact of actual control over the agent." *Gordon v. Greenview Hospital, Inc.*, 300 S.W.3d 635, 653 (Tenn. 2009) (citation omitted). "The focus of this inquiry . . . is placed upon the actions and consent of the principal, rather than upon the agent's actions or the willingness of the agent to perform those actions." *White*, 33 S.W.3d at 723. And what ultimately matters is the principal's "control of the means and method" of the agent's work. *McDonald v. Dunn Construction Co.*, 185 S.W.2d 517, 520 (Tenn 1945); *see also Texas Co. v. Bryant*, 152 S.W.2d 627, 631 (Tenn. 1941) ("The right to control the results does not establish the master and servant relationship, but the right to control the means and methods does."). Thus, what matters is whether PEMCO and RSC each retained a right to control the means and methods of Plaintiffs' work. *Accord Bush Bros. & Co. v. Hickey*, 223 F.2d 425, 426 (6th Cir. 1955) (applying Tennessee law); *Lindsey v. Trinity Communications, Inc.*, 275 S.W.3d 411, 419 (Tenn. 2009); *Youngblood v. Wall*, 815 S.W.2d 512, 517 (Tenn. 1991) (citing *Bush Bros*).

Applying the Tennessee standard to the requirements of Federal Rule of Civil Procedure 12(b)(6), the Court is guided by the decisions of other jurisdictions applying the same standard in the same context. Under California law, "[t]he key factor to consider in analyzing whether an entity is an employer is the right to control and direct the activities of the person rendering service, or the manner and method in which the work is performed." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 682 (6th Cir. 2009) (internal quotation marks omitted). Applying this test, the court in *Smith v. Worldlink Inc.*, 2009 WL 2365966 (C.D. Cal. July 30, 2009), denied a

defendant's Rule 12(b)(6) motion on the issue of whether it had employed the plaintiff. *Id.* at *4. In reaching this conclusion the court found that, while the defendant had no say in the plaintiff's compensation, it employed the plaintiff's supervisor, who had the authority to dictate the plaintiff's deadlines and to discipline him. *Id.*

Conversely, the court in *Orosa v. Therakos, Inc.*, 2011 WL 3667485 (N.D. Cal. Aug. 22, 2011), found that the plaintiff had failed to sufficiently allege that the defendant had employed her. *Id.* at *6. The court based its holding on the grounds that, while the defendant had the power to hire, transfer, and terminate the plaintiff, paid nearly all of her benefits and business expenses, and had long treated her as its employee, the plaintiff nevertheless failed to establish that the defendant had any day-to-day control over the "manner and method" in which she performed her work. *Id.* at *5.

As to PEMCO, Plaintiffs aver nothing to suggest that it controlled the "means and method" of their work. *McDonald*, 185 S.W.2d at 520. The strongest support for this claim lies in its statutory right of "direction and control"; however, this authority may be illusory in fact, and Plaintiffs do not claim that PEMCO actually retained this right of control. *See supra* pp. 11–12. Indeed, Plaintiffs state that "[t]he day-to-day supervision of Plaintiffs was done by Mountain Laurel management." [D. 28 at ¶ 17] PEMCO, therefore, never employed Plaintiffs under Tennessee law, and accordingly their state-law claims against it are hereby **DISMISSED**, **with prejudice**.

Plaintiffs allege even less against RSC, solely claiming that they "were required to perform work for RSC as part of their employment duties." (*Id.* at ¶ 21.) While this statement alone may leave open the possibility that RSC was the party directly requiring such work, Plaintiffs foreclose this interpretation when they state that Mountain Laurel conducted their day-to-day

supervision. (*Id.* at ¶ 17.). Thus, for purposes of Plaintiffs' state law claims, RSC did not *per se* employ Plaintiffs.

## II.     RSC and Mountain Laurel Were Not a Tennessee Partnership

As with their federal claims, Plaintiffs raise the alternative argument that RSC employed Plaintiffs by virtue of being an integrated entity with Mountain Laurel. [D. 24 at 5–6; D. 25 at 5–6] However, more precisely, Plaintiffs appear to be raising an argument within the purview of partnership law—specifically, that Mountain Laurel and RSC are actually a single entity quasi-partnership.

"Whether a partnership exists in a given case depends upon applicable state law." *Matter of Special Grand Jury No. 1, Impanelled December, 1977 Term*, 465 F. Supp. 800, 805 (D. Md. 1978) (citing *Bellis v. United States*, 417 U.S. 85, 96–97 (1974)). In Tennessee, the applicable law is TENN. CODE ANN. § 61-1-101 *et seq.*, Tennessee's Revised Uniform Partnership Act. Under section 101(11), the term "person" as used in the Act includes general partnerships, of which RSC is one, [D. 28 at ¶ 7] and corporations, such as Mountain Laurel. (*Id.* at ¶ 6.) This alleged partnership is thus possible under Tennessee partnership law.

The Act plainly provides that, with some exceptions, "the association of two (2) or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intend to form a partnership." TENN. CODE ANN. § 61-1-202(a).  The court in *Bass v. Bass*, 814 S.W.2d 38 (Tenn. 1991) summarized the relevant facts which Tennessee courts use to determine whether there is the requisite association:

> Although a contract of partnership, either express or implied, is essential to the creation of partnership status, it is not essential that the parties actually intend to become partners. The existence of a partnership is not a question of the parties' undisclosed intention or even the terminology they use to describe their relationship, nor is it necessary that the parties have an understanding of the legal

> effect of their acts. It is the intent to do the things which constitute
> a partnership that determines whether individuals are partners,
> regardless if it is their purpose to create or avoid the relationship.

*Id.* at 41 (citations omitted). Or, stated even more succinctly, "the existence of a partnership may be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money." *Id*; *see also Derickson v. United States Department of Agriculture*, 546 F.3d 335, 341 (6th Cir. 2008) (applying the Act).

The factual bases of Plaintiffs' partnership argument are that the general manager of Mountain Laurel and a partner of RSC are married, [D. 28 at ¶ 15] and that Mountain Laurel, unlike any of its other clients, did not charge RSC for its labor. [*Id.* at ¶ 21] Plaintiffs have not alleged any facts permitting a reasonable inference that RSC and Mountain Laurel were engaged in an enterprise for the purpose of profit. Where plaintiffs have failed to do so, courts applying a state's version of the Act have universally granted defendants' Rule 12(b)(6) motions. *See UBI Telecom, Inc. v. KDDI America, Inc.*, 2014 WL 2965705 (D.N.J. June 30, 2014); *Lyon Financial Services, Inc. v. Illinois Paper & Copier Co.*, 2011 WL 1740132 (N.D. Ill. May 4, 2011) (applying identical Illinois and Minnesota law); *Starnes Family Office, LLC v. McCullar*, 765 F. Supp. 2d 1036 (W.D. Tenn. 2011); *Slaby v. Fairbridge*, 3 F. Supp. 2d 22 (D.D.C. 1998); *cf. Building 11 Investors LLC v. City of Seattle*, 912 F. Supp. 2d 972 (W.D. Wash. 2012) (granting defendant's Rule 12(c) motion in part because plaintiff insufficiently alleged existence of partnership); *Bradbury Co., Inc. v. Teissier-duCros*, 2004 WL 3059542 (D. Kan. Dec. 29, 2004) (rejecting plaintiff's motion to join parties on basis that parties were as a matter of law not in a partnership with defendant).

Conversely, courts in this context have generally denied Rule 12(b)(6) motions where the plaintiff has proffered factual allegations of a profit motive. *See Reilly v. Meffe*, 6 F.Supp.3d 760

(S.D. Ohio Mar. 19, 2014) (court can properly find a partnership exists from evidence that there has been a sharing of net profits); *Robertson v. Mauro*, 2013 WL 3293069 (D. Idaho June 28, 2013); *Cressy v. Proctor*, 2013 WL 1431052 (D. Vt. Apr. 9, 2013); *Kibec v. Balog*, 2012 WL 2529202, at *5 (D. Or. May 29, 2012) (denying Rule 12(b)(6) motion because plaintiff alleged he contributed money to a business intended to generate profits); *Khader v. Hadi Enterprises*, 2010 WL 5300876 (E.D. Va. Dec. 22, 2010). Accordingly, Plaintiffs have failed to aver that RSC and Mountain Laurel were engaged in a business relationship for profit, and their state-law claims against RSC are **DISMISSED**, **with prejudice**.

### C. Plaintiffs' Third Amended Complaint States a Plausible FCA Claim

Under the FCA's retaliatory firing provision, "[a]ny employee . . . shall be entitled to all relief necessary to make that employee . . . whole, if that employee . . . is discharged . . . because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop one or more violations of this subchapter." 31 U.S.C. § 3730(h)(1). In order to prove retaliatory discharge under this section, a plaintiff must show: "(1) he engaged in a protected activity; (2) his employer knew that he engaged in the protected activity; and (3) his employer discharged or otherwise discriminated against the employee as a result of the protected activity." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003) (citing *McKenzie v. BellSouth Telecommunications, Inc.*, 219 F.3d 508, 513–14 (6th Cir. 2000) (*McKenzie II*)). "Protected activity" consists of those "lawful acts done by the employee . . . in furtherance of an action" under the False Claims Act. *United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 449 (6th Cir. 2008). Defendants argue that Plaintiffs have insufficiently alleged the first two elements. [D. 17 at 9–12; D. 19 at 9–12]

24

## I. Plaintiffs Have Sufficiently Alleged They Engaged in Protected Activity

In this Circuit, "in furtherance of," or "protected," activity, is that which "relate[s] to exposing fraud or involvement with a false claims disclosure." *McKenzie II*, 219 F.3d at 516 (internal quotation marks omitted). At the same time, however, an employee "need not expressly know that the FCA allows *qui tam* actions to be filed against their employer, or have already filed such an action to be protected from retaliation under § 3730(h)." *Id.* And neither must an employee "use formal words of 'illegality' or 'fraud.'" *Id.* Rather, an employee "must sufficiently allege activity with a nexus to a *qui tam* action, or fraud against the United States government." *Id.*

Notably for the instant context, "internal reporting may constitute protected activity," although "the internal reports must allege fraud on the government." *Id.* This requires that such reports to be outside the employee's scope of employment, that they do more than simply urge compliance with applicable regulations, and that they rise to a level beyond "merely reporting wrongdoing to supervisors." *Id.* at 516–17.

The Sixth Circuit in *United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439 (6th Cir. 2008), held that the plaintiff's conduct constituted protected activity where she had objected to her superiors regarding the defendant-employer's medical-record inaccuracies and, crucially, wrote to its president and general manager stating her refusal to participate in illegal activities and the nature of these illegal activities. *Id.* at 449. The court found this to constitute protected activity because "[plaintiff's] allegations, if true, would mean that BWXT had defrauded the United States government, and [plaintiff] made it clear that she understood that."

By this measure, Olivas has alleged protected activity: He informed management of Mountain Laurel that he "would not take such risks as falsely paying an undocumented worker"

and "protested the employment of Gomez as an illegality." [D. 28 at ¶ 30]. If true, such conduct would constitute fraud upon the United State government, and Olivas's mention of "risks" shows that he was aware of this.

The court likewise finds that Merritt sufficiently averred protected activity by telling her supervisor that "it was wrong of Mountain Laurel to hire an undocumented worker," [*Id.* at ¶ 31], and—crucially—reporting her concerns to the IRS. [*Id.* at ¶ 36]. While "wrong" may be construed in myriad ways in the instant context, the fact that Merritt reported her concerns to the IRS strongly suggests that she considered it *illegal* for Mountain Laurel to employ an undocumented worker.[6] Her allegations thus, if true, would amount to fraud against the United States government, and her understanding of that is clear. Plaintiffs therefore sufficiently plead the first element of their FCA retaliation claim. *See also United States ex rel. Howard v. Lockheed Martin Corp.*, 499 F. Supp. 2d 972, 983 (S.D. Ohio 2007) (rejecting a 12(b)(6) motion where plaintiffs alleged that they had complained to supervisors about improper billing to the Government and on Government contracts).

## II. Plaintiffs Have Sufficiently Averred that Defendants Were on Notice of a Possible *Qui Tam* Action

To satisfy the notice element of a § 3730(h)(1) action, the employee "must supply sufficient facts from which a reasonable jury could conclude that the employee was discharged because of activities which gave the employer reason to believe that the employee was contemplating a *qui tam* action against it." *United States ex rel. McKenzie v. BellSouth Telecommunications, Inc.*, 123 F.3d 935, 944 (6th Cir. 1997) (*McKenzie I*) (quoting *Mikes v. Strauss*, 889 F. Supp. 746, 753 (S.D.N.Y. 1995)). However, at the motion to dismiss stage, the burden is significantly lighter:

---

[6] This construction is bolstered by the rule that, when evaluating a complaint in light of a Rule 12(b)(6) motion, it "is construed in the light most favorable to the plaintiff, and we accept the complaint's allegations as true, drawing all reasonable inferences in favor of the plaintiff." *Crugher v.Prelesnik*, 761 F.3d 610, 613 (6th Cir. 2014). The same applies to Olivas's concern about the "risks" of employing Gomez.

The plaintiff must only "allege activities that would have given the defendant reason to believe that she was contemplating a *qui tam* action." *Marlar*, 525 F.3d at 449 (internal quotation marks omitted). A complaint alleging retaliatory firing under § 3730(h)(1) will satisfy this burden—and, indeed, will survive a Rule 12(b)(6) motion—where a plaintiff "alleges that she observed purportedly fraudulent activity, she confronted her employer about it, and her employer fired her because of it." *Id.* at 449–50 (quoting *Mikes*, 889 F. Supp. at 752–53). As noted above, Plaintiffs have sufficiently alleged the first two requirements and the third is not contested here. Accordingly, Plaintiffs have sufficiently averred retaliatory discharge in violation of the False Claims Act.

## IV.  Conclusion

For the reasons state herein, Defendants' motions to dismiss [R. 16, 18] are **GRANTED in part and DENIED in part** as follows:

1.  Defendants' motions to dismiss plaintiffs' claims brought against PEMCO under the Fair Labor Standards Act and the False Claims Act are **DENIED;** the motions are **GRANTED** as to the state law claims brought against PEMCO for violation of the Tennessee Public Protection Act, the Tennessee Lawful Employment Act, and the Tennessee common law.  Accordingly, these state law claims against PEMCO are **DISMISSED, with prejudice.**

2.  Defendants' motions to dismiss all federal and state law claims brought against RSC are **GRANTED**.  Accordingly, all claims against RSC are **DISMISSED, with prejudice;** and RSC is **DISMISSED** as a defendant in this action.

3.  Defendants' motions to dismiss Plaintiffs' federal and/or state law claims brought against Mountain Laurel Chalets, Inc., are **DENIED.**

**IT IS SO ORDERED.**

UNITED STATES DISTRICT JUDGE